# Exhibit A

FILED
2025 OCT 23 02:15 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 25-2-31578-9 SEA

## IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
## COUNTY OF KING

| | |
|---|---|
| CINDY MURPHY and ERIKA MCINNIS, on their own behalf and on behalf of all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>H & M FASHION USA, INC.<br><br>Defendant. | Case No. _____<br><br>**CLASS ACTION COMPLAINT (RCW 19.190, 19.86) AND REQUEST FOR JURY TRIAL** |

## I.    NATURE OF THE ACTION

1. This is a class action brought by Named Plaintiffs Cindy Murphy ("Murphy") and Erika McInnis ("Mcinnis") (collectively "Named Plaintiffs") against H&M Fashion USA, Inc. ("H&M" or "Defendant") for false and misleading email marketing.

2. Defendant sends two types of emails to Washington consumers which contain false or misleading information in the subject lines.

3. First, Defendant sends emails with subject lines that falsely represent unqualified discounts on purchases without disclosing material exclusions ("Percentage Discount Emails"). The subject lines of the Percentage Discount Emails imply a straightforward percentage discount on the recipient's entire purchase (such as "25% off

Class Action Complaint - 1

13   sitewide" or "20% off everything" or "15% off your purchase"), without limitations or

14   exclusions, enticing consumers to open the email in anticipation of a broad bargain. Upon

15   opening the email, however, the body reveals that there are significant exclusions that do

16   not qualify for the percentage discount.

17       4.   The Percentage Discount Emails contain subject lines that are false or

18   misleading because they omit material exclusions, leading reasonable consumers to believe

19   that they will receive the promised percentage discount on their entire purchase. These

20   omissions are material as they mislead reasonable consumers about the discount's scope,

21   inducing interest in purchases that may not qualify and affect purchasing decisions.

22       5.   Under FTC Guides Against Deceptive Pricing at 16 C.F.R. § 233.1, bargain

23   advertising like percentage-off offers must be genuine and not deceptive; reductions should

24   be from a regular price without undisclosed limitations that undermine the claimed savings.

25       6.   Defendant's Percentage Discount Emails that contain subject lines with

26   unqualified percentage discounts off the purchase are misleading as the exclusions

27   contained in the fine print within the body of the email substantially restrict the offer's

28   applicability, failing to disclose terms "at the outset" in a manner that avoids

29   misunderstanding. Defendant knowingly omits these exclusions in Percentage Discount

30   Emails subject lines to drive email opens and engagement, as evidenced by their consistent

31   use of fine-print disclaimers in promotional emails.

32       7.   Second, Defendant sends emails that misstate the duration of given

33   promotions, in an apparent effort to drive sales by creating a false sense of urgency

34   ("Limited Sale Emails"). These misstatements are material because they mislead

Class Action Complaint – 2

35   reasonable consumers about sale durations, inducing urgency that affects purchasing

36   decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

37      8.    The subject lines of the Limited Sales Emails falsely claim that a certain

38   sale or discount is limited to a specific time, such as "all weekend" or "ends today" or

39   "ends tonight" or "Final Hours," when, in reality, the offer lasts longer than advertised or

40   the item has already been on sale for longer than advertised.

41      9.    Defendant also uses its preconceived "sale extensions" as an excuse to send

42   consumers additional emails purporting to notify them that a sale is ending or that a sale

43   has been extended. This practice causes consumers' inboxes to become inflated with spam.

44      10.   Defendant's practice of sending Percentage Discount Emails and Limited

45   Sale Emails that contain false and misleading information in the subject line violates the

46   Washington Commercial Electronic Mail Act ("CEMA"), RCW 19.190, and the

47   Washington Consumer Protection Act, RCW 19.86.

48      11.   By sending Percentage Discount Emails and Limited Sale Emails with false

49   and misleading information to Named Plaintiffs and the Class (defined below), Defendant

50   clogs email inboxes with false information and violates Named Plaintiffs and Class

51   members rights to be free from deceptive commercial emails.

52      12.   Named Plaintiffs bring this action as a class action on behalf of persons

53   residing in Washington who also received Defendant's false and misleading emails. Named

54   Plaintiffs requested relief includes an injunction to end these practices, an award to Named

55   Plaintiffs and Class members of statutory damages under RCW 19.190.040 (1) and treble

56   damages under RCW 19.86.090 for each illegal email sent, and an award of attorneys' fees

57   and costs.

Class Action Complaint – 3

58  **II.   PARTIES**
59
60         13.    Named Plaintiff Murphy is a citizen of Washington State, residing in King
61  County, Washington.

62         14.    Named Plaintiff Mcinnis is a citizen of Washington State, residing in Pierce
63  County, Washington.

64         15.    Defendant H&M is a corporation formed under the laws of the State of
65  Wisconsin. Defendant currently is, and at all relevant times in the past has, engaged in
66  substantial business activities in Washington.

67         16.    Defendant owns and operates a large online marketplace, sells its products
68  in physical store locations throughout the state, and sends the marketing emails at issue in
69  this Complaint to consumers throughout Washington.

70  **III.   JURISDICTION AND VENUE**

71         17.    This Court has subject matter jurisdiction over this civil action pursuant to,
72  without limitation, Section 6 of Article IV of the Washington State Constitution (Superior
73  Court jurisdiction, generally), RCW 19.86.090 (Superior Court jurisdiction over Consumer
74  Protection Act claims) and RCW 19.190.090 (Superior Court jurisdiction over Commercial
75  Electronic Mail Act claims).

76         18.    This Court has personal jurisdiction over Defendant under RCW 4.28.185.
77  This Court may exercise personal jurisdiction over the out-of-state Defendant because the
78  claims alleged in this civil action arose from, without limitation, Defendant's purposeful
79  transmission of electronic mail messages to consumers within the State of Washington. In
80  addition, Defendant intended, knew, or is chargeable with the knowledge that its out-of-
81  state actions would have a consequence within Washington.

Class Action Complaint – 4

82      19.     This Court also has personal jurisdiction over Defendant under RCW

83   19.86.160. For example, and without limitation, Defendant engaged and is continuing to

84   engage in conduct in violation of RCW 19.86 which has had and continues to have an

85   impact in Washington which said chapter reprehends.

86      20.     Venue is proper in King County Superior Court because Defendant has its

87   residence in King County. RCW 4.12.025. Currently and at all relevant times, Defendant

88   has transacted business in King County, including without limitation by sending the

89   marketing emails alleged herein to residents of King County, and maintaining stores for

90   the transaction of business within King County.

91   **IV.    FACTUAL ALLEGATIONS**

92      **A.     The CEMA prohibits initiating or conspiring to initiate the**
93             **transmission of commercial emails that contain any false or misleading**
94             **information in the subject lines.**
95

96      21.     Washington's Commercial Electronic Mail Act ("CEMA") regulates

97   deceptive email marketing.

98      22.     "CEMA was enacted to protect concrete interests in being free from

99   deceptive commercial e-mails. CEMA's prohibition on sending commercial e-mails with

100  false or misleading subject lines . . . creates a substantive right to be free from deceptive

101  commercial emails." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1011 (W.D.

102  Wash. 2019).

103     23.     The Washington Supreme Court recently confirmed this understanding,

104  holding that RCW 19.190.020(1)(b) "prohibits the use of any false or misleading

105  information in the subject line of a commercial e-mail." *Brown v. Old Navy, LLC*, 4 Wn.3d

106  580, 583 (2025).

Class Action Complaint – 5

107      24.      An injury occurs anytime a commercial email is transmitted that contains
108   false or misleading information in the subject line. *Id*. at 1011. In *Brown*, the Washington
109   Supreme Court reaffirmed that "the injury is receiving the e-mail that violates CEMA,"
110   and that a plaintiff need not show actual damages to recover statutory penalties. *Brown*, 4
111   Wn.3d at 585.

112      25.      Under CEMA, it is irrelevant whether misleading commercial emails were
113   solicited. *Harbers*, 415 F. Supp. 3d at 1011. The Washington Supreme Court echoed this
114   point in *Brown*, emphasizing that the statute is not limited to deception about the nature or
115   solicitation of the message but applies broadly to any false or misleading subject line.
116   *Brown*, 4 Wn.3d at 590, 594.

117      26.      CEMA creates an independent but limited private right of action which can
118   be asserted by a person who is the recipient of a commercial electronic mail message which
119   contains false or misleading information in the subject line. RCW 19.190.030(1)(b). A
120   plaintiff who successfully alleges and proves such a violation may obtain, among other
121   things, an injunction against the person who initiated the transmission. RCW
122   19.190.090(1). In addition, the statute authorizes statutory damages of $500 per violation.
123   RCW 19.190.040(1); *see also Brown*, 4 Wn.3d at 585 (confirming that no showing of
124   actual damages is required to recover statutory damages under CEMA).

125      27.      It is a violation of the Consumer Protection Act, RCW 19.86 *et seq*., to
126   initiate the transmission or conspire with another person to initiate the transmission of a
127   commercial electronic mail message that contains false or misleading information in the
128   subject line. RCW 19.190.030(1). As the Washington Supreme Court explained, CEMA

Class Action Complaint – 6

129    violations are *per se* violations of the CPA because the Legislature recognized that such

130    conduct is categorically contrary to the public interest. *Brown*, 4 Wn.3d at 592.

131         28.    To establish a violation of Washington's CPA, a claimant must establish

132    five elements: (1) an unfair or deceptive act or practice, (2) in trade or commerce, (3) that

133    affects the public interest, (4) injury to plaintiff's business or property, and (5) causation.

134    *Hangman Ridge Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 533 (Wash. 1986).

135         29.    Washington and federal courts have held that a plaintiff states a CPA claim

136    solely by alleging a violation of the CEMA. *See State v. Heckel*, 143 Wash.2d 824, 24 P.3d

137    404, 407 (2001).

138         **B.    Defendant initiates or conspires to initiate the transmission of**
139              **commercial emails that contain false or misleading information in the**
140              **subject lines.**
141

142         30.    Defendant has initiated (or conspired to initiate) the transmission of

143    hundreds of commercial electronic mail messages with false or misleading subject lines to

144    Named Plaintiffs and the Class. The emails were electronic mail messages, in that they

145    were each an electronic message sent to an electronic mail address; the emails from

146    Defendant also referred to an internet domain, whether or not displayed, to which an

147    electronic mail message can or could be sent or delivered.

148         31.    Defendant sent the emails for the purpose of promoting its goods for sale.

149         32.    The emails were sent at Defendant's direction and were approved by

150    Defendant.

151              **1.    Percentage Discount Emails**

152    33.    Defendant frequently sends emails with subject lines promising a
153    percentage off the recipient's purchase. The body of these emails (and fine print), however,
154    contains significant and material exclusions.

155    34.    H&M uses the terms "sitewide" and "everything" interchangeably within
156    its Percentage Discount Emails.

157    35.    For example, on July 10, 2023, Defendant sent Named Plaintiffs and Class
158    members an email with a subject line that stated: "Extended! 15% off everything[.]"

159    36.    On July 6, 2025, Defendant sent Named Plaintiffs and Class members an
160    email with a subject line that stated: "20% off sitewide ends today[.]"

161    37.    On July 23, 2025, Defendant sent Named Plaintiffs and Class members an
162    email with a subject line that stated: "Today only: 15% off sitewide[.]"

163    38.    On August 20, 2025, Defendant sent Named Plaintiffs and Class members
164    an email with a subject line that stated: "Today only: 20% off sitewide[.]"

165    39.    These subject lines imply that a straightforward discount will be applied on
166    the recipient's purchase, without limitations or exclusions.

167    40.    The fine print at the bottom of each email, however, states that exclusions
168    will apply from the unqualified offer in the subject line.

169    41.    Thus, if the recipient purchases any product or service that is excluded from
170    the discount, they will not receive the discount offered in the subject line.

171    42.    Such omissions as to what constitutes "sitewide" or "everything" in the
172    subject lines of these types of emails create a reasonable probability that consumers will
173    be misled about the true scope of the discount.

Class Action Complaint – 8

174    43.    And Defendant understands how to restrict an offer in the subject line of an
175    email because from time to time, Defendant does in fact restrict the scope of the sale in the
176    subject line.

177    44.    For instance, on July 16, 2024, Defendant sent Class members an email with
178    a subject line that stated: "20% off (almost) everything starts now!"

179    45.    And on April 17, 2025, Defendant sent Class members an email with a
180    subject line that stated: "Up to 50% off sitewide starts now[.]"

181    **2.    Limited Sale Emails**

182    46.    Defendant also frequently sends emails with subject lines advertising the
183    "limited" nature of sales, discounts, and prices. For example, Defendant sends emails that
184    state a sale will last "all weekend" or "ends today" or "ends tonight" or in its "Final Hours,"
185    implying urgency and finality, but then follows up with extensions of the same offer. By
186    stating that a sale is only on for a limited time, Defendant suggests an offer's rarity or
187    urgency, stimulating consumers' desire to get the deal before it ends. Defendant knowingly
188    understates sale durations in subject lines, as evidenced by their routine extensions of
189    advertised "limited" periods, to create this false urgency. These misstatements are material
190    because they mislead reasonable consumers about sale durations, inducing urgency that
191    affects purchasing decisions, as recognized by the FTC in 16 C.F.R. § 233.5.

192    47.    Defendant's Limited Sales Emails are false or misleading because the sales,
193    discounts, and prices advertised as limited in time are not actually limited in time, as
194    Defendant routinely extends them beyond the advertised end dates.

195    48.    On October 17, 2022, Defendant sent an email with a subject line stating
196    "Extended—20% off $60 or more! Don't wait!"

Class Action Complaint – 9

197    49.    On April 30, 2023, Defendant sent an email with a subject line stating
198    "Extended! 15%, 20% or 25% off[.]"

199    50.    On July 10, 2023, Defendant sent an email with a subject line stating
200    "Extended! 15% off everything[.]"

201    51.    On September 25, 2023, Defendant sent an email with a subject line stating
202    "Extneded! Up to 20% off[.]"

203    52.    On November 25, 2023, Defendant sent an email with a subject line stating
204    "30% off for Black Friday extended!"

205    53.    On August 26, 2024, Defendant sent an email with a subject line stating
206    "Surprise! Up to 20% off for 1 more day[.]"

207    54.    And the following timelines related to these types of "limited" sales
208    illustrate this pattern.

209    55.    On January 14, 2024, Defendant sent an email with a subject line stating
210    "20% off for the long weekend!"

211    56.    On January 15, 2024, Defendant sent an email with a subject line stating
212    "20% off ends tonight!"

213    57.    Also on January 15, 2024, Defendant sent an email with a subject line
214    stating "20% off is almost gone!"

215    58.    But on January 16, 2024, Defendant sent an email with a subject line stating
216    "Extended! 20% off sitewide for 1 more day[.]"

217    59.    Defendant followed a similar pattern where, on July 5, 2025, Defendant sent
218    an email with a subject line stating "20% off will be here all weekend[.]"

Class Action Complaint – 10

219    60.    On July 6, 2025, Defendant doubled down on this urgency by sending
220    another email with the subject line "20% off sitewide ends today[.]"

221    61.    Expressing the urgency of the sale duration, again on July 6, 2025,
222    Defendant sent an email with the subject line "Final hours: 20% off every summer thing[.]"

223    62.    But the weekend sale did not end at the end of the weekend. Rather, on July
224    7, 2025, Defendant sent an email with the subject line "Surprise: 20% off extended for
225    Members[.]" expressly extending the same promotion beyond the advertised deadline.

226    63.    By falsely stating the duration of the sale and issuing serial "extension"
227    emails, Defendant misled consumers regarding the true time limits of the offer.

228    **C.    Named Plaintiffs and Washington residents have received commercial**
229    **emails from Defendant that contain false or misleading information in**
230    **the subject lines.**
231
232    64.    Defendant sent the misleading commercial emails to email addresses that
233    Defendant knew, or had reason to know, were held by Washington residents, either because
234    (i) Defendant had a physical Washington address that was associated with the recipient;
235    (ii) Defendant had access to data regarding the recipient indicating that they were in
236    Washington state; or (iii) information was available to Defendant upon request from the
237    registrant of the internet domain name contained in the recipient's electronic mail address.

238    65.    Defendant knows where many of its customers reside through several
239    methods.

240    66.    First, for any person that places an order online from Defendant, Defendant
241    associates an email address with a shipping address and/or billing address for that order.

242   67.   Second, Defendant encourages online shoppers to create online accounts.
243   Customers save information in their Defendant accounts along with their email address,
244   such as shipping addresses, billing addresses, and phone numbers.

245   68.   Third, discovery will show that Defendant employs methods to track the
246   effectiveness of its marketing emails and to identify consumers that click on links contained
247   in Defendant's marketing emails, including by identifying their physical location.

248   69.   Fourth, Defendant also utilizes cookies, pixels, and other online tracking
249   technologies to identify and locate the consumers that click on links contained in
250   Defendant's marketing emails and that visit its website.

251   70.   Fifth, discovery will also show that Defendant employs sophisticated third
252   parties who create profiles of customers and potential customers, including their email
253   address and physical location.

254   71.   Lastly, Defendant also knew, should have known, or had reason to know
255   that it sends marketing emails to Washington residents due to its large presence in the state
256   and the volume of marketing emails it sends to people around the country.

257   72.   At all times relevant to this Complaint, Named Plaintiffs resided in
258   Washington.

259   73.   Named Plaintiffs have received Defendant's emails for several years.

260   74.   Named Plaintiffs have received hundreds of marketing emails from
261   Defendant within the last four years, and typically received more than five emails every
262   week.

263   75.   Named Plaintiffs received emails from Defendant through email providers
264   that have data limits. Named Plaintiffs currently have several hundred emails from

Class Action Complaint – 12

265 Defendant in their inboxes, but discovery will show that they have received more emails

266 that they have deleted to conserve the finite space available in their email inboxes.

267  76. Defendant knows, or has reason to know, that Named Plaintiffs' email

268 addresses are held by Washington residents. Named Plaintiffs have accounts with

269 Defendant that reflect their home address in Washington. Named Plaintiffs have made

270 several purchases from the Defendant's website that have been delivered to her home in

271 Washington. Named Plaintiffs have also repeatedly clicked on links contained in

272 Defendant's emails from her computer, which was registered to an IP address in

273 Washington at all relevant times, or from their smart phone, which was located in

274 Washington unless Named Plaintiffs happened to be traveling.

275  77. Named Plaintiffs received the emails with false and misleading subject lines

276 described above. Named Plaintiffs received additional emails with false and misleading

277 subject lines from Defendant.

278  78. Defendant sent these emails to Named Plaintiffs for the purpose of

279 promoting Defendant's goods for sale.

280  79. Defendant initiated the transmission or conspired to initiate the transmission

281 of these commercial electronic mail messages to Named Plaintiffs.

282  80. Named Plaintiffs do not want to receive emails with false and misleading

283 subject lines from Defendant, though they would like to continue receiving truthful

284 information from Defendant regarding its products. Due to Defendant's conduct, however,

285 Named Plaintiffs cannot tell which emails from Defendant contain truthful information or

286 which emails are spam with false and misleading information designed to spur them to

287 make a purchase.

Class Action Complaint – 13

288      81.    Named Plaintiffs have identified more than one hundred (100) Defendant
289 emails with false and misleading subject lines. These emails were sent between October 6,
290 2021 and the date this Complaint was filed, showing that Defendant engaged in this
291 conduct throughout the relevant time period.

292      82.    Named Plaintiffs continue to receive emails with false and misleading
293 subject lines. Because Named Plaintiffs have deleted some of the emails they have received
294 from Defendant, they are not presently able to identify all the emails with false and
295 misleading subject lines they received. Defendant is aware of all the emails it has sent
296 Named Plaintiffs and discovery will show the full number of illegal false and misleading
297 emails Defendant has sent throughout the relevant time period.

298 **V.    CLASS ACTION ALLEGATIONS**

299      83.    <u>Class Definition</u>. Pursuant to Civil Rule 23(b)(3), Named Plaintiffs bring
300 this case as a class action on behalf of a Class defined as:

301 All Washington residents[1] who, within four years before the
302 date of the filing of this complaint until the date any order
303 certifying a class is entered, received an email from or at the
304 behest of Defendant that contained a subject line stating or
305 implying that 1) a percentage discount off would apply to the
306 recipient's purchase "sitewide" or off "everything" with no
307 conditions or exclusions; or 2) a sale, discount, price, or
308 other offer would end soon or on a definitive date, and the
309 sale, discount, price, or other offer continued to be offered
310 for at least an additional day.
311
312 Excluded from the Class are Defendant, any entity in which
313 Defendant has a controlling interest or that has a controlling
314 interest in Defendant, and Defendant's legal representatives,
315 assignees, and successors. Also excluded are the judge to

---

[1] Residents" shall have the same meaning as "persons" as defined in RCW 19.190.010(11)
and RCW 19.86.010(a).

316      whom this case is assigned and any member of the judge's
317      immediate family.
318
319      84.   <u>Numerosity</u>. The Class is so numerous that joinder of all members is

320  impracticable. The Class has more than 1,000 members. Moreover, the disposition of the

321  claims of the Class in a single action will provide substantial benefits to all parties and the

322  Court.

323      85.   <u>Commonality</u>. There are numerous questions of law and fact common to

324  Named Plaintiffs and members of the Class. The common questions of law and fact

325  include, but are not limited to:

326          a.  Whether Defendant sent commercial electronic mail messages with

327              false and misleading information in the subject lines;

328          b.  Whether Defendant initiated the transmission or conspired to initiate the

329              transmission of commercial electronic mail messages to recipients

330              residing in Washington State in violation of RCW 19.190.020;

331          c.  Whether a violation of RCW 19.190.020 establishes all the elements of

332              a claim under Washington's Consumer Protection Act, RCW 19.86 *et*

333              *seq.*;

334          d.  Whether Named Plaintiffs and the proposed Class are entitled to an

335              injunction enjoining Defendant from sending the unlawful emails in the

336              future; and

337          e.  The nature and extent of Class-wide damages.

338      86.   <u>Typicality</u>. Named Plaintiffs' claims are typical of the claims of the Class.

339  Named Plaintiffs' claims, like the claims of the Class, arise out of the same common course

340  of conduct by Defendant and are based on the same legal and remedial theories.

Class Action Complaint – 15

341    87.    Adequacy. Named Plaintiffs will fairly and adequately protect the interests

342    of the Class. Named Plaintiffs have retained competent and capable attorneys with

343    significant experience in complex and class action litigation, including consumer class

344    actions. Counsel for Named Plaintiffs have significant experience representing consumers

345    in cases involving violations of CEMA. Named Plaintiffs and their counsel are committed

346    to prosecuting this action vigorously on behalf of the Class and have the financial resources

347    to do so. Neither Named Plaintiffs nor their counsel have interests that are contrary to or

348    that conflict with those of the proposed Class.

349    88.    Predominance. Defendant has a standard practice of initiating or conspiring

350    to initiate commercial electronic mail messages to email addresses held by Washington

351    State residents. The common issues arising from this conduct predominate over any

352    individual issues. Adjudication of these issues in a single action has important and desirable

353    advantages of judicial economy.

354    89.    Superiority. Named Plaintiffs and members of the Class have been injured

355    by Defendant's unlawful conduct. Absent a class action, however, most Class members

356    likely would find the cost of litigating their claims prohibitive. Class treatment is superior

357    to multiple individual suits or piecemeal litigation because it conserves judicial resources,

358    promotes consistency and efficiency of adjudication, provides a forum for small claimants,

359    and deters illegal activities. The members of the Class are readily identifiable from

360    Defendant's records and there will be no significant difficulty in the management of this

361    case as a class action.

362    90.    Injunctive Relief. Defendant's conduct is uniform as to all members of the

363    Class. Defendant has acted or refused to act on grounds that apply generally to the Class,

Class Action Complaint – 16

364    so that final injunctive relief or declaratory relief is appropriate with respect to the Class as

365    a whole. Named Plaintiffs further alleges, on information and belief, that the emails

366    described in this Complaint are substantially likely to continue in the future if an injunction

367    is not entered.

368    **VI.    CAUSES OF ACTION**

369                                    **FIRST CLAIM FOR RELIEF**
370    (Violation of Washington's Commercial Electronic Mail Act, RCW 19.190 *et seq.*)
371

372    91.    Named Plaintiffs reallege and incorporate by reference each and every

373    allegation set forth in the preceding paragraphs.

374    92.    Washington's CEMA prohibits any "person," as that term is defined in

375    RCW 19.190.010(11), from initiating or conspiring to initiate the transmission of a

376    commercial electronic mail message from a computer located in Washington or to an

377    electronic mail address that the sender knows, or has reason to know, is held by a

378    Washington resident that contains false or misleading information in the subject line. These

379    prohibitions target falsity or deception, as interpreted in *Brown v. Old Navy, LLC*, 567 P.3d

380    38 (Wash. 2025).

381    93.    Defendant is a "person" within the meaning of the CEMA, RCW

382    19.190.010(11).

383    94.    Defendant initiated the transmission or conspired to initiate the transmission

384    of one or more commercial electronic mail messages to Named Plaintiffs and proposed

385    Class members with false or misleading information in the subject line.

386    95.    Defendant's acts and omissions violated RCW 19.190.020(1)(b). Defendant

387    knew or had reason to know of the falsity of the subject lines, as shown by its repeated

Class Action Complaint – 17

388     patterns of omitting conditions and exclusions in subject lines while burying them in the

389     fine print of the body of the email.

390         96.     Defendant's acts and omissions injured Named Plaintiffs and proposed

391     Class members, as receipt of such misleading emails constitutes injury under CEMA and

392     the CPA as a matter of law, clogging inboxes and wasting time.

393         97.     The balance of the equities favors the entry of permanent injunctive relief

394     against Defendant. Named Plaintiffs, the members of the Class, and the general public will

395     be irreparably harmed absent the entry of permanent injunctive relief against Defendant. A

396     permanent injunction against Defendant is in the public interest. Defendant's unlawful

397     behavior is, based on information and belief, ongoing as of the date of the filing of this

398     pleading; absent the entry of a permanent injunction, Defendant's unlawful behavior will

399     not cease and, in the unlikely event that it voluntarily ceases, is likely to reoccur.

400         98.     Pursuant to RCW 19.190.040(1), Named Plaintiffs and each Class member

401     is entitled to the greater of $500 per commercial electronic mail message sent in violation

402     of RCW 19.190.020(1)(b) or actual damages.

403         99.     In addition, Named Plaintiffs and Class members are therefore entitled to

404     injunctive relief in the form of an order enjoining further violations of RCW

405     19.190.020(1)(b).

406                         **SECOND CLAIM FOR RELIEF**
407         (*Per se* violation of Washington's Consumer Protection Act, RCW 19.86 *et seq.*)
408
409         100.    Named Plaintiffs reallege and incorporate by reference each and every

410     allegation set forth in the preceding paragraphs.

411         101.    Named Plaintiffs and Class members are "persons" within the meaning of

412     the CPA, RCW 19.86.010(1).

Class Action Complaint – 18

413   102.   Defendant violated the CEMA by initiating or conspiring to initiate the
414   transmission of commercial electronic mail messages to Named Plaintiffs and Class
415   members that contain false or misleading information in the subject line, amounting to
416   material deception.

417   103.   A violation of CEMA is a "per se" violation of the Washington Consumer
418   Protection Act ("CPA"), RCW 19.86.010, *et seq*. RCW 19.190.030.

419   104.   A violation of the CEMA establishes all five elements of Washington's
420   Consumer Protection Act as a matter of law.

421   105.   Defendant's violations of the CEMA are unfair or deceptive acts or
422   practices that occur in trade or commerce under the CPA. RCW 19.190.100.

423   106.   Defendant's unfair or deceptive acts or practices vitally affect the public
424   interest and thus impact the public interest for purposes of applying the CPA. RCW
425   19.190.100.

426   107.   Pursuant to RCW 19.190.040(1), damages to each recipient of a commercial
427   electronic mail message sent in violation of the CEMA are the greater of $500 for each
428   such message or actual damages, which establishes the injury and causation elements of a
429   CPA claim as a matter of law.

430   108.   Defendant engaged in a pattern and practice of violating the CEMA. As a
431   result of Defendant's acts and omissions, Named Plaintiffs and Class members have
432   sustained damages, including $500 in statutory damages, for each and every email that
433   violates the CEMA. The full amount of damages will be proven at trial. Named Plaintiffs
434   and Class members are entitled to recover actual damages and treble damages, together
435   with reasonable attorneys' fees and costs, pursuant to RCW 19.86.090.

Class Action Complaint – 19

436        109.   Under the CPA, Named Plaintiffs and members of the Class are also entitled

437  to, and do seek, injunctive relief prohibiting Defendant from violating the CPA in the

438  future.

439        110.   Defendant's deceptive practices are ongoing and likely to continue absent

440  injunction, as evidenced by its consistent email patterns, vitally affecting the public interest

441  in truthful commercial communications.

442  **VII.   REQUEST FOR RELIEF**

443        WHEREFORE, Named Plaintiffs, on their own behalf and on behalf of the

444  members of the Class, request judgment against Defendant as follows:

445        A.  That the Court certify the proposed Class;

446        B.  That the Court appoint Named Plaintiffs as Class Representative;

447        C.  That the Court appoint the undersigned counsel as counsel for the Class;

448        D.  That the Court grant injunctive relief as permitted by law to ensure that

449             Defendant will not continue to engage in the unlawful conduct described in

450             this Complaint;

451        E.  That the Court enter a judgment awarding any other injunctive relief

452             necessary to ensure Defendant's compliance with the CEMA;

453        F.  That Defendant be immediately restrained from altering, deleting, or

454             destroying any documents or records that could be used to identify members

455             of the Class;

456        G.  That Named Plaintiffs and all Class members be awarded statutory damages

457             in the amount of $500 for each violation of the CEMA pursuant to RCW

458             19.190.040(1) and treble damages pursuant to RCW 19.86.090;

Class Action Complaint – 20

459     H. That the Court enter an order awarding Named Plaintiffs reasonable

460       attorneys' fees and costs; and

461     I. That Named Plaintiffs and all Class members be granted other relief as is

462       just and equitable under the circumstances.

463  **VIII.  TRIAL BY JURY**

464    Named Plaintiffs demand a trial by jury for all issues so triable.

465         Respectfully submitted,

466         Z LAW, LLC

467  Dated: October 23, 2025   /s/ David M. Trojanowski (WSBA # 56258)_____
468         Cory L. Zajdel, Esq. (*pro hac*
469         *vice forthcoming*)
470         David M. Trojanowski, Esq. (WSBA # 56258)
471         2345 York Road, Suite B-13
472         Timonium, Maryland 21093
473         (443) 213-1977
474         clz@zlawmaryland.com
475         dmt@zlawmaryland.com
476
477         *Attorneys for Named Plaintiffs*
478